IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SIRIUS COMPUTER SOLUTIONS, INC. | § § § | |
| Plaintiff, | § § | |
| V. | § § | Civil Action No. 5:19-cv-1193 |
| JEFF COMER. | § § § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Sirius Computer Solutions, Inc. ("Sirius") files this action against its former employee, Defendant Jeff Comer ("Comer"), for breach of contract under Delaware law due to his failure to abide by his contractual obligations and repay $116,555.57 that Sirius previously paid to him under its Service Unit and Performance Unit Appreciation Plans adopted in November 2015 ("Plans"). In support thereof, Sirius respectfully shows as follows:

**I.     INTRODUCTION**

1.     Defendant Comer has blatantly ignored his contractual obligations owed to his former employer, Sirius. Specifically, Comer refuses to return $116,555.57 that Sirius paid to him on or about July 15, 2019 under its Plans, just one day before he resigned his employment with Sirius. To receive this payment, Comer executed a letter agreement in June 2019 that reaffirmed his previous consent to, among other obligations, certain restrictive covenants included within the Plans. Specifically in relation to this lawsuit, the Plans barred Comer, for a period of one year following the end of his Sirius employment, from becoming employed with any business that competed with Sirius during the twelve months prior to Comer's Sirius employment ending. Under the terms of the Plans, the consequence for violating this prohibition

1

is the cancellation of any unvested Service and Performance Units and the return of any previous payments received for Service and Performance Units.  Despite Comer's written assent to this non-competition prohibition in an original letter agreement signed in January 2017 and his written reaffirmation in June 2019, Comer went to work for a direct competitor of Sirius, Presidio, Inc., in July 2019, shortly after his Sirius employment ended.  Sirius thereafter demanded Comer return the $116,557.57 paid to him under the forfeiture provisions of its Plans, but to date, Comer has refused to repay Sirius as contractually required.  Sirius thus asks this Court to find Comer in breach of his contractual obligations and order him to repay to Sirius the $116,557.57 owed, forfeit any additional related amounts held in escrow (approximately $8,000), and reimburse Sirius its costs incurred in filing this action.

## II.   PARTIES

2. Sirius is a Texas corporation with its corporate headquarters and principal place of business located in San Antonio, Texas at 10100 Reunion Place, Suite 500, San Antonio, Texas 78216.

3. Defendant Comer is former employee of Sirius and an individual residing in Matthews, North Carolina.  Comer may be served with process at his residence, 617 Amanda Drive, Matthews, North Carolina, 28104.

## III.   VENUE, JURISDICTION, & CHOICE OF LAW

4. This Court has original jurisdiction of this matter under diversity jurisdiction, 28 U.S.C.A. §1332(a)(1), because the controversy is between citizens of different States and the amount in controversy exceeds the minimum jurisdictional requirements of this Court.

5. Venue is proper in Bexar County, Texas, pursuant to the Plans to which the parties agreed.  The Service Unit Appreciation Plan provides in Paragraph 12(h) for exclusive jurisdiction of any dispute in San Antonio, Texas or the federal courts in Bexar County, Texas.

The same is provided in Paragraph 11(h) of the Performance Unit Appreciation Plan.  Through his execution of letter agreements incorporating the Plans on January 25, 2017 and June 17, 2017, Comer expressly waived any argument that San Antonio or Bexar County, Texas would be an inconvenient forum.  Comer also waived any right to a jury trial.

6. Through his execution of letter agreements incorporating the Plans on January 25, 2017 and June 17, 2017, Comer agreed that Delaware law would apply to all determinations made and actions taken with respect to and under the Plans.

### IV.   BACKGROUND FACTS

7. Sirius is a national IT solutions integrator of technology-based business solutions headquartered in San Antonio, Texas.  Sirius maintains locations throughout the United States through which it sells and delivers its technology-based business solutions.

8. Sirius's Board of Directors serves as the Committee that administers two implemented equity plans adopted effective November 18, 2015:  (1) Sirius Computer Solutions, Inc. Service Unit Appreciation Plan and (2) Sirius Computer Solutions, Inc. Performance Unit Appreciation Plan.  These Plans, as they are collectively referred to throughout this Complaint, provide participants the opportunity to receive equity and then eventually cash payments from Sirius for Service and Performance Units held, provided certain distributions were made under the Amended and Restated Limited Liability Company Agreement of SCS Holdco, LLC, which is a Delaware limited liability company and the parent company of Sirius.

9. Pursuant to the Plans, Service and Performance Units could be awarded only to a select group of employees as determined by the Chief Executive Officer of Sirius.  Typically, these employees included those holding the title of Director and above, but other sales and technical employees have been awarded Service and Performance Units in the years since as approved by the Committee.

10. The purpose of the Plans, as stated therein, is to incentivize employees who contributed to Sirius' success in the past to continue to promote the success of Sirius in the future. In effect, the Plans were designed to reward and encourage continued loyalty while at the same time ensuring the integrity and protection of Sirius' confidential information, business goodwill, and existing client and employment relationships. However, by also including a forfeiture provision, the Plans allowed employees awarded Service and Performance Units under the Plans to choose whether they would abide by the restrictive covenants contained in the Plans or instead forfeit any Service and Performance Units awarded or related cash payments received.

11. On May 1, 2015, Comer joined Sirius as a Security Solutions Sales Specialist through Sirius' acquisition of Comer's former employer, Varrow, Inc. On January 1, 2016, Comer was promoted to serve as a Manager, Security Solutions, and on January 1, 2017, Comer was promoted again, this time to serve as a Director of Sales and General Manager.

12. On January 25, 2017, shortly after his promotion to a Director of Sales and General Manager for Sirius, Comer signed a letter agreement with Sirius under which he was granted 2,500 Service Units with a vest date of January 1, 2017 and 7,500 Performance Units under the Plans. However, as a condition of his receipt of these Service and Performance Units, Comer agreed to certain restrictive covenants set forth in each of the Plans. Copies of the Plans were incorporated by reference into the letter agreement and were provided to Comer for his review before he signed the letter agreement on January 25, 2017.

13. Specifically, Paragraph 9 of the Service Unit Appreciation Plan provides, in pertinent part, as follows:

9.     **Restrictive Covenants.**

(a)     Noncompetition; Confidentiality and Nonsolicitation. Other than as provided in Section 9(h), the covenants and restrictions contained in this Section 9 are in addition to, and not in lieu of, any covenants or restrictions applying pursuant to any employment, severance, consulting services or other agreement to which any Participant to whom Service Units are awarded is a party, unless such agreement expressly provides that the provisions thereof supersede this Section 9; provided, however, that the Participant will not be deemed to be in breach of a provision of this Section 9 by reason of any act or occurrence that expressly does not constitute a violation of the noncompetition and nonsolicitation provisions set forth in an employment agreement with the Participant's Employer or any of its Affiliates, including by reason of an express exclusion therefrom; and provided further that the provisions in this Section 9 shall be subject to any express amendment, modification or waiver set forth in the Award Agreement.

(b)     Noncompetition. During the Restricted Period (as defined below), each Participant agrees not to be engaged, directly or indirectly (other than as a holder of not in excess of one percent (1%) of the outstanding voting shares of any publicly traded company), whether as a principal, partner, member, employee, independent contract, consultant, shareholder or otherwise, in (i) a business or endeavor which is competitive with or similar to any business of Parent or any of its subsidiaries conducted during the twelve (12) months preceding the date the Participant ceases to be employed by his or her Employer, or (ii) any potential business which has been submitted to the Board for consideration and is under active consideration by the Board at any time prior to the date that the Participant ceases to be employed by his or her Employer.

(c)     Confidentiality. All materials and information obtained by a Participant, together with all other confidential or proprietary information of Parent and its subsidiaries (such materials and information collectively, the "Confidential Information"), shall be kept confidential, shall be used only in the good faith performance of the Participant's duties to the Participant's Employer and shall not be disclosed to any third party except: (i) information which is or becomes publicly available (other than as a result of disclosure by the Participant in violation hereof or a third party violation of such third party's contractual, legal or fiduciary obligation to Parent or any of its subsidiaries); (ii) information which is independently developed, discovered or arrived at by the Participant without use of Confidential Information; (iii) if applicable, to the Participant's existing or prospective equity holders, directors, officers, trustees, partners, employees, agents, accountants, representatives and professional consultants on a need-to-know-basis; (iv) in any report, statement, testimony or other submission to any governmental authority having or claiming to have jurisdiction over the Participant; (v) in order to comply with any law, rule, regulation or order applicable to, or in response to any summons, subpoena or other legal process or formal or informal investigative demand issued to such recipient in the course of

any litigation, investigation or administrative proceeding, or (vi) for the benefit of Parent and its subsidiaries and in accordance with any restrictions placed on its disclosure by Parent or the Participant's Employer. In the event that any Participant (or person to whom the Participant has made a disclosure permitted under this Section 9) becomes legally compelled by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar judicial or administrative process to disclose any Confidential Information, the disclosing party shall provide the Company with prompt prior written notice of such requirement and shall cooperate reasonably with the Company, at the Company's expense, to obtain a protective order or similar remedy to cause such Confidential Information not to be disclosed, including interposing all available objections thereto, such as objections based on settlement privilege. In the event that such protective order or other similar remedy is not obtained, the disclosing party shall furnish only that portion of such Confidential Information that has been legally compelled to be furnished.

. . .

(f) <u>Injunctive Relief with Respect to Covenants</u>. Each Participant acknowledges and agrees that the covenants and obligations in this Section 9 with respect to noncompetition, nonsolicitation and confidentiality, as the case may be, set forth herein relate to special, unique and extraordinary matters and that a violation or threatened violation of any of the terms of such covenants or obligations will cause Parent and its subsidiaries irreparable injury for which adequate remedies are not available at law. Therefore, each Participant agrees, to the fullest extent permitted by applicable law, that the Company shall be entitled to an injunction, restraining order or such other equitable relief (without the requirement to post bond) restraining the Participant from committing any violation of the covenants or obligations contained in this Section 9. These injunctive remedies are cumulative and are in addition to any other rights and remedies Parent or any of its subsidiaries may have at law or in equity. In connection with the foregoing provisions of this Section 9, the Participant represents that his or her economic means and circumstances are such that such provisions will not prevent the Participant from providing for the Participant's and his or her family on a basis satisfactory to the Participant.

(g)     <u>Unenforceable Restrictions</u>. It is expressly understood and agreed that although the Participant, Parent, and the Company consider the restrictions contained in Section 9 to be reasonable, if a final determination is made by an arbitrator to whom the parties have assigned the matter or a court of competent jurisdiction that any restriction contained in this Section 9 is an unenforceable restriction against the Participant, the provisions of this Section 9 shall not be rendered void but shall be reformed to apply as to such maximum time and to such maximum extent as such arbitrator or court may determine or indicate to be enforceable. Alternatively, if such arbitrator or court finds that any restriction contained in this Section 9 is unenforceable, and such restriction cannot be

reformed so as to make it enforceable, such finding shall not affect the enforceability of any of the restrictions contained herein.

14. Paragraph 10 of the Service Unit Appreciation Plan further provides as follows:

<u>Forfeiture of Service [Performance] Units upon Violation of Restrictive Covenants</u>. Notwithstanding any provision of the Plan to the contrary, if the Committee determines that a Participant has breached any restrictive covenant (whether pursuant to the Plan or otherwise) related to preservation of confidential information, noncompetition, nonsolicitation, nondisparagement, or the like, in each case relating to the Parent, Company and/or their respective Affiliates, to which the Participant is subject, the Committee may, in its discretion (and in combination, and without limiting any other available remedy), (i) cancel all of the Participant's Service Units without payment of consideration therefor and (ii) require the Participant to return to the Company any payments that the Participant has previously received hereunder.

15. Paragraphs 8 and 9 of the Performance Unit Appreciation Plan are identical in substance to Paragraphs 9 and 10 of the Service Unit Appreciation Plan.

16. As a Security Solutions Sales Specialist, a Manager, Security Solutions, and then a Director of Sales and General Manager, Comer was privy, on an increasing and growing basis, to confidential and proprietary information belonging to Sirius. This Confidential Information belonging to Sirius, as will be referred to hereafter in this Complaint, included, but was not limited to, client information and records (such as client files and network information; internal and client computer configurations; client-specific buying needs, requirements and habits; client payment practices and histories; future client needs; and non-publicly available client contact information), pricing and profit margin information, marketing information, vendor lists and vendor pricing, confidential financial data, training and training programs, billing practices, implementation methodologies, marketing plans and strategies, growth strategies, transactional terms and conditions, compensation plans, and discussions regarding competitors, existing, clients, and potential clients.

17. As a Manager and Director, Comer was privy to a broader and greater amount of Confidential Information as well as new Confidential Information pertaining to the employees who reported to him, such as, but not limited to, the employees' compensation arrangements with Sirius and the terms and conditions of their employment with Sirius.

18. Throughout his Sirius employment, Comer was responsible for, first directly and then less directly as a Manager and Director, soliciting clients for Sirius, which included tasks such as identifying leads, contacting leads, formulating proposals based on Sirius' confidential pricing methodology, and preparing presentations for Sirius' existing or potential clients. Comer also served as a contact for Sirius' existing and potential clients, and he was charged with building and maintaining relationships with existing and potential clients.

19. As a Manager and Director, Comer was placed in a position of trust and confidence and was charged with managing, supervising, and generally overseeing employees who engaged in the same sales activities he did as a Security Solutions Sales Specialist.

20. On January 1, 2018, Comer left his position of Director of Sales and General Manager and became a Senior Client Executive for Sirius. However, Comer's duties, responsibilities, and exposure to Confidential Information, while on a reduced scale in comparison to his Director position, remained the same as that described above.

21. Whether through the Plans or Sirius' Employee Handbook, Comer was well aware throughout his employment with Sirius as to what information Sirius considered Confidential Information and to which he had a contractual and common law obligation not to disclose or use for any purpose other than for the benefit of Sirius. Comer also was well aware, beginning in January 2017 and continuing through the end of his employment tenure, that Sirius would not have put him in a greater position of trust and confidence, provided him with further

and new Confidential Information, or awarded him Service and Performance Units under the Plans, but for his express written promise and assurance that he would abide by the restrictive covenants contained in the Plans.

22.    On June 12, 2019, Sirius sent a letter agreement to Comer that advised him that Sirius' parent companies, SCS Holdco, LLC and SCS Holdings I, Inc., had entered into a merger agreement dated April 3, 2019 with a new entity.  As stated in the letter agreement, upon completion of the merger, which was estimated to be on or about July 1, 2019, holders of Service and Performance Units under the Plans would receive cash consideration from the Company.

23.    As stated in the June 12, 2019, letter agreement, upon completion of the merger, all outstanding Service Units were to be cancelled and terminated in exchange for a specified cash payment and 80% of all outstanding Performance Units were approved to vest and then to be cancelled and terminated in exchange for another specified cash payment.  According to the June 12, 2019 letter agreement, the remaining 20% of the outstanding Performance Units were to be cancelled without payment.

24.    Under the terms of the June 12, 2019 letter agreement, Comer was advised that he did not have to exercise any of his incentive units or make any additional cash payments to obtain the cash payments resulting from the merger for his outstanding Service and Performance Units held.  He was, however, required to execute a general release as a condition of the cash payments, which was included and incorporated within the June 12, 2019 letter agreement.  Comer also was reminded that, despite the cash payments, he would continue to be subject to the restrictive covenants set forth in Section 9 of the Service Unit Appreciation Plan and Section 8 of the Performance Unit Plan, and that his written acceptance of the June 12, 2019 letter agreement would serve as an acknowledgment of those continuing obligations.

25. On June 17, 2019, Comer sent a signed copy of the June 12, 2019 letter agreement via email to Will Potts, Sirius' contact listed in the June 12, 2019 letter agreement. The signed copy reflected Comer's signature and handwritten name.

26. On or around July 15, 2019, pursuant to the June 12, 2019 letter agreement, Sirius made a cash payment in the amount of $116,555.57 to Comer for his outstanding Service and Performance Units held. Comer then notified Sirius that he was resigning his employment. Comer's employment ended on or around July 17, 2019.

27. Around the time of Comer's resignation, Sirius learned that Comer was accepting a job position with Presidio, Inc. ("Presidio"). According to Comer's LinkedIn profile available publicly on the internet, Comer's new position is titled Cyber Security BDM (Business Development Manager). His LinkedIn profile also reflects that he began this new position in July 2019 and continues to hold it today. Upon information and belief, Comer has been working on and will likely continue to work on the same types of projects and responsibilities for Presidio as he did for Sirius.

28. Sirius and Comer's new employer, Presidio, are direct competitors. Indeed, Sirius and Presidio offer many of the same services and solutions, and they often bid against each other for the same projects and same potential clients within the same geographic areas. Both Sirius and Presidio in fact have offices in North Carolina, which is where Comer resides. Thus, with his new employment, Comer is in a position to use Sirius' business goodwill and Confidential Information in a manner that will benefit Presidio and be to the detriment of Sirius, particularly with respect to client development and competitive proposals but also through his other related job duties. Moreover, Comer's employment violates the noncompetition provisions contained in

Section 9 of the Service Unit Appreciation Plan and Section 8 of the Performance Unit Appreciation Plan.

29. Upon learning of Comer's hire with Presidio, Sirius' Senior Vice President and General Counsel sent a letter to Comer reminding him about the restrictive covenants contained in the Plans and enclosing a copy of Comer's acceptance of their terms on January 25, 2017 and a copy of Comer's written reaffirmation of those same terms through his signed June 12, 2019 letter agreement. Sirius also pointed out that Comer's employment with Presidio violated the noncompetition provision contained in the Plans and demanded Comer choose either to abide by his contractual obligations or be subjected to legal action in an effort to recover the monies Sirius paid to him for his Service and Performance Units on or about July 15, 2019. A copy of this letter was sent to Comer's new employer, Presidio, to ensure, as stated therein, that Comer would abide by his remaining continuing obligations under the Plans. Upon information and belief, Comer and Presidio received their respective July 17, 2019 letters from Sirius on or about July 18, 2019.

30. Pursuant to Section 10 of the Service Unit Appreciation Plan and Section 9 of the Performance Unit Appreciation Plan, Sirius has determined that Comer has chosen to breach the noncompetition provisions contained in Sections 9 and 8 of those Plans, respectively, and, with no repayment received or forthcoming from Comer in the amount of $116,557.55, Sirius files the instant lawsuit to compel him to return to Sirius this amount that he received as a cash payment for his outstanding Service and Performance Units on or about July 15, 2019 and to forfeit any remaining amount held in escrow (approximately $8,000).

## V.   BREACH OF CONTRACT

31. Sirius hereby incorporates by reference the allegations contained in Paragraphs 1 through 30 above.

32. Ancillary to and as a condition of receiving equity in the form of Service and Performance Units awarded in January 2017 and agreeing to protect Sirius' Confidential Information, business goodwill, and client and employee relationships, Comer agreed and promised, among other things, not to accept employment with a competitor of Sirius for a period of one year following the end of his Sirius employment. Comer also reaffirmed this agreement and promise on June 17, 2019.

33. In consideration for his agreement and promises, Sirius awarded Comer 2,500 Service Units and 7,500 Performance Units under the Plans, gave and provided him access to Confidential Information beginning in January 2017 and continuing through his resignation in July 2017, paid him $116,557.55 for his outstanding Service and Performance Units on or about July 15, 2019, and held an additional amount in escrow (approximately $8,000).

34. Comer nevertheless has breached his agreement and promises to Sirius by choosing to accept and continue his employment with Presidio within one year following his resignation from employment with Sirius and not return the $116,557.55 paid for his Service and Performance Units.

35. As a result of Comer's breach and choice, Sirius is entitled to repayment of the $116,557.55, Comer's forfeiture of any additional amounts held in escrow (approximately $8,000), and reimbursement of any costs Sirius incurs in bringing and prosecuting this lawsuit, with pre- and post-judgment interest applied as appropriate.

### VI.    CONDITIONS PRECEDENT

36. Any and all conditions precedent to Sirius' claim for relief have been performed or have occurred. In particular, and not limited to, Sirius has determined under the Plans that Comer's employment with Presidio violates the noncompetition provisions contained in those Plans.

## VIII.   REQUEST FOR RELIEF

In light of the foregoing, Sirius requests that, upon final hearing, this Court enter judgment in favor of Sirius and against Defendant Comer, and award Sirius the $116,557.55 repayment its seeks, the approximate $8,000 held in escrow currently, and its costs incurred in this litigation, any applicable pre- and post-judgment interest, and such other and further relief to which Sirius may be entitled.

Respectfully submitted,

SCHMOYER REINHARD LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
Telephone:    210/447-8033
Facsimile:    210/447-8036

/s/ Christine E. Reinhard
Christine E. Reinhard
State Bar No. 24013389
creinhard@sr-llp.com
Annalyn G. Smith
State Bar No. 18532500
asmith@sr-llp.com
Dylan A. Farmer
State Bar No. 24093417
dfarmer@sr-llp.com

**ATTORNEYS FOR PLAINTIFF
SIRIUS COMPUTER SOLUTIONS, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served by *certified mail, return receipt requested* to:

Jeff Comer
617 Amanda Drive
Matthews, North Carolina 28104

Jeff Comer
15608 Canmore St
Charlotte, North Carolina 28277

on this 7th day of October, 2019.

                                                /s/ Christine E. Reinhard_____
                                                Christine E. Reinhard